IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1340

Filed: 15 September 2015

Harnett County, 13 CVS 02242

ERICA K. PARKER, Individually, as Administrator of the ESTATE OF CULLEN REECE PARKER, and A. TRENT PARKER, Plaintiffs,

v.

TOWN OF ERWIN, MARK BYRD, Erwin Public Works Department, in his individual and official capacity, WARREN M. MORRISETTE, former Erwin Chief of Police, in his individual and official capacity, BRYAN THOMPSON, former Erwin Town Manager, in his individual and official capacity, ERWIN AREA CHAMBER OF COMMERCE, ERWIN PARKING CENTER, INC., TIMOTHY C. MORRIS, JAMES DARRYL WEST, TAMMY RENEE WEST, AMERICAN MOBILE HOME SUPPLY, INC., ERWIN FIRE DEPARTMENT AND RESCUE SQUAD, INC. (d/b/a Erwin Fire & Rescue Department), HARNETT COUNTY EMS, RICKY DENNING, EMS Division Chief, in his individual and official capacity, HARNETT COUNTY ENHANCED 911 CENTER, and L. JOHNSON, 911 Center Unit Operator #0754, in her individual and official capacity, Defendants.

Appeal by Defendants Town of Erwin, Mark Byrd, Warren M. Morrisette, and Bryan Thompson from order entered 20 August 2014 by Judge Thomas H. Lock in Superior Court, Harnett County, and cross-appeal by Plaintiffs from amended order entered 30 September 2014 by Judge Thomas H. Lock in Superior Court, Harnett County. Heard in the Court of Appeals 20 April 2015.

The Law Offices of F. Bryan Brice, Jr., by Matthew D. Quinn and Catherine Cralle Jones, for Plaintiffs–Appellees/Cross-Appellants.

Teague, Campbell, Dennis & Gorham, L.L.P., by Bryan T. Simpson and Natalia K. Isenberg, for Defendants–Appellants/Cross-Appellees Town of Erwin, Mark Byrd, Warren M. Morrisette, and Bryan Thompson.

Brown, Crump, Vanore & Tierney, L.L.P., by O. Craig Tierney, Jr. and Michael W. Washburn, for Defendant–Appellee Timothy C. Morris.

McGEE, Chief Judge.

Town of Erwin ("the Town"), Mark Byrd, individually and in his official capacity as the director of the Erwin Public Works Department ("Mr. Byrd"), Warren M. Morrisette, individually and in his official capacity as the former Chief of Police of the Town ("Mr. Morrisette"), and Bryan Thompson, individually and in his official capacity as the former Town Manager ("Mr. Thompson") (collectively "Town Defendants") appeal from the trial court's order denying their N.C. Gen. Stat. § 1A-1, Rules 12(b)(2) and (b)(6) motions to dismiss the complaint filed by Erika K. Parker ("Mrs. Parker"), individually and as administrator of the estate of her son Cullen Reece Parker ("Cullen") and A. Trent Parker ("Mr. Parker") (collectively "Plaintiffs"). Plaintiffs cross-appeal from the trial court's amended order dismissing with prejudice Plaintiffs' complaint as to Timothy C. Morris ("Mr. Morris").

With respect to Town Defendants' appeal and the trial court's denial of Town Defendants' Rule 12(b)(2) motions to dismiss Plaintiffs' claim that Town Defendants negligently breached their duty of care to ensure the safety of residents and visitors to the 2011 Erwin Christmas parade, we reverse the trial court's denial of Town Defendants' motions on the grounds that this claim is barred by sovereign immunity. With respect to Town Defendants' appeal and the trial court's denial of Town Defendants' Rule 12(b)(2) motions to dismiss Plaintiffs' claim that Town Defendants violated N.C. Gen. Stat. § 160A-296(a), we remand this matter for further proceedings

consistent with this opinion. With respect to Plaintiffs' cross-appeal and the trial court's order granting Mr. Morris's Rule 12(b)(6) motion to dismiss Plaintiffs' complaint as to Mr. Morris, we affirm the trial court's order.

I.  Facts and Procedural History

The evidence in the record tends to show that a Christmas parade was held in Erwin, North Carolina, on 5 December 2011. The official parade route covered seven blocks and formed a horseshoe shape. The route ran east to west for three blocks along Denim Drive, south to north for one block along South 13th Street, and west to east for three blocks along East H Street. Denim Drive and East H Street run parallel to each other, and the parade crossed South 11th Street and South 12th Street, and began and ended at the intersection of South 10th Street. Barricades restricted vehicular traffic along the principal parade route, but traffic ingress and egress was permitted for a publicly-accessible, privately-owned parking lot ("the parking lot"), which was bordered by East H Street to the north, South 12th Street to the east, Denim Drive to the south, and South 13th Street to the west.

Mrs. Parker and her sons, almost-four-year-old Cullen and his older brother Colby Parker ("Colby") (collectively "the Parkers"), traveled to Erwin to participate in and view the parade. Mrs. Parker left Colby with his school choir, which was participating in the parade, and she and Cullen watched the parade with a small group of family and friends ("the group") from a viewing area on the sidewalk along

the north side of Denim Drive to the west of its intersection with South 12th Street ("the viewing area"). After Colby's choir passed the viewing area, Mrs. Parker left Cullen with his grandmother, walked to the area where Colby's choir was disbanding, and returned with Colby to the viewing area to watch the remainder of the parade with the group.

When the last participants of the parade passed the viewing area, the group began walking to Tubby's, a nearby restaurant ("the restaurant"), which was located at the southwest corner of East H Street and South 12th Street, and was northeast of the viewing area from where the group watched the parade. The group, consisting of the Parkers and four other people, walked in a northeast direction across the parking lot before proceeding north along South 12th Street. The group then walked in front of a building owned by Mr. Morris. Between Mr. Morris's building and the rear of the restaurant, there is a privately-owned alley ("the alley") that allows ingress and egress onto South 12th Street, to and from the parking lot through which the group had walked.

The group stopped walking at the south side of the alley, just past Mr. Morris's building, and waited to cross the alley as a car exited the parking lot onto South 12th Street. The group then proceeded to walk north across the alley towards the restaurant. Just as most of the group cleared the alley, Mrs. Parker heard Colby scream at Cullen to "get out of the way." Mrs. Parker and the other members of the

group then saw a car strike Cullen with its front left bumper. The driver reported that she did not see Cullen before hitting him with her vehicle. It was after 8:00 p.m., the sun had set at 5:01 p.m., and the alley was not illuminated by street lights, by lighting from the rear of the retail spaces including the restaurant, or by lighting from Mr. Morris's building.

After the witnesses alerted the driver that Cullen was under her vehicle, she backed up, "freeing Cullen from underneath the front driver's side wheel and leaving him conscious but severely injured." A Harnett County Sheriff's officer came upon the scene and alerted another officer, who reported the incident. The first 911 report was placed at 8:27 p.m. and emergency responders, including Erwin Fire & Rescue Department, Coats Fire & Rescue, and Harnett County EMS, were dispatched a minute later. However, the emergency responders were dispatched to *North* 12th Street, which was at least two blocks north of the incident site. Due to this confusion, the first EMS unit to arrive on scene — which was not among the first units dispatched — did not arrive at the incident site until fourteen minutes after the incident was reported. Although Cullen was "initially conscious, crying and responsive," at 8:34 p.m., he was reported to have become "unresponsive." The emergency responders requested a pediatric multi-system trauma medical air transport to Betsy Johnson Regional Hospital in Dunn, North Carolina, but this air transport did not arrive. Cullen was taken by ambulance to Betsy Johnson Regional

Hospital, where emergency department personnel rendered treatment until approximately 9:45 p.m., when Cullen was pronounced dead as a result of the injuries he sustained.

Plaintiffs filed a complaint in December 2013 against Town Defendants, Mr. Morris, Erwin Area Chamber of Commerce ("the Chamber"), as well as the owners of the restaurant, the parking lot, the retail space adjoining the restaurant (collectively "the property owners"), and various emergency medical service providers and emergency responders. The woman who struck Cullen with her vehicle was not named as a party in Plaintiffs' complaint. Plaintiffs asserted several claims of negligence and negligence *per se* against Town Defendants and the Chamber, a claim of negligence against the property owners, claims of negligence against various emergency medical service providers and emergency responders, and a claim of negligent infliction of emotional distress against all of the named defendants.

In their complaint, Plaintiffs alleged, in relevant part, that Town Defendants and the Chamber "worked together to plan and sponsor the event" and, in doing so, that they collectively failed to:

> a) Prevent vehicle ingress and egress from parking areas inside the parade route prior to, during and immediately after the parade. In particular, there were no barricades restricting traffic from entering or exiting the [parking] lot on South 12th Street, no police or safety personnel assisting pedestrians and drivers leaving the parade area at a specific ingress/egress point within the parade route;

b)  Provide safe walking paths for pedestrians to access and exit the parade route. In particular, there was no marked pedestrian walkway from Denim Drive to East H Street, and there was no police or public safety presence directing or preventing traffic flow along South 12th Street;

c)  Provide adequate police presence to manage public safety at the event. For example, there was a single Erwin Police Car positioned across from the [parking] lot exit on South 12th Street. However, the car was unmanned with no officer providing traffic control or pedestrian support in that area. The presence of the unmanned car presented a false and misleading impression of safety to the public; [and]

d)  Test and ensure proper function of street lights inside, along and surrounding the parade route. For example, the public street light on South 12th Street, located directly in front of [Mr. Morris's building], was not lit[.]

Plaintiffs also alleged the Town had purchased liability insurance that was in effect on the dates relating to the claims alleged, and that by purchasing liability insurance, Town Defendants "ha[d] waived any defense of immunity from suit pursuant to N.C. Gen. Stat. § 160A-485(a), *et seq.*" In the alternative, Plaintiffs alleged that "the tortious acts and omissions alleged . . . arose in the course of proprietary or private activities by [Town Defendants]." Plaintiffs further alleged that "[t]he sponsoring, organizing, publicizing and carrying out of the logistics of the Christmas Parade by [the Town] and [the Chamber we]re proprietary activities, engaged in for the private

advantage and commercial gain of the local Erwin community members and businesses," and "[a]lternatively, [the Town] entered into a joint enterprise or joint venture with [the Chamber] to sponsor, organize, promote and carry out the 2011 Christmas Parade." Plaintiffs also alleged that, by not submitting an application for a permit, Town Defendants and the Chamber violated §§ 6-2021 and 6-2023 of Part 6, Chapter 2, Article C of the Town's ordinances, and breached the duties owed to Plaintiffs "by failing to apply for, obtain, and carry a permit pursuant to the Town Ordinance and by failing to require that a permit be obtained in order to ensure that the parade met the standards for a parade set forth in the Town Ordinance." Plaintiffs also alleged that the Town breached its statutory duty to "keep streets, sidewalks[,] and alleys in proper repair, in a reasonably safe condition and free from unnecessary obstructions" in accordance with N.C. Gen. Stat. § 160A-296(a)(2), (4)–(5), and (7). With respect to Mr. Morris, Plaintiffs alleged that he "failed to maintain functioning lights on his building to light the alley, thus restricting visibility for the driver who struck Cullen."

Town Defendants moved to dismiss Plaintiffs' complaint pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(2) and (b)(6), asserting that Plaintiffs lacked personal jurisdiction over Town Defendants on the basis of sovereign immunity, and failed to state a claim against Town Defendants upon which relief could be granted on the basis of public official immunity and the public duty doctrine. When they filed their

motions to dismiss, Town Defendants also filed affidavits from Mr. Thompson and from the Town's finance director. They also filed an affidavit from the senior underwriting manager of the Town's insurance company, which affidavit consisted of the insurance policy — in its entirety — that was issued to the Town for the policy period of 1 July 2011 to 1 July 2012.

Upon Plaintiffs' amended motion, the trial court entered an order on 30 April 2014 continuing the hearing on Town Defendants' motions to dismiss and allowing discovery served on Town Defendants "limited in scope to only those issues raised in [Town Defendants'] Rule 12(b)(2) Motion[s] to Dismiss for lack of personal jurisdiction on the basis of sovereign immunity and public official immunity." The trial court further ordered that the parties reserved the right to depose or serve discovery on Town Defendants and on the affiants in support of Town Defendants' motions to dismiss "on other topics should [Town Defendants'] Motions to Dismiss be denied[.]"

Mr. Morris filed an amended answer to Plaintiffs' complaint in which he alleged several defenses. Mr. Morris also moved to dismiss the claims brought against him pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on the grounds that he had no duty to "provid[e] illumination to adjacent property and that no active or passive conduct alleged to have been attributable to [Mr. Morris] was legally causative of any injuries to the Plaintiff individually or as administrator of the estate of the decedent either for claims of negligence[.]"

The respective motions to dismiss by Mr. Morris and Town Defendants were heard on 21 July 2014. In addition to the pleadings and affidavits previously filed, Town Defendants presented the following additional discovery materials to the trial court for consideration with respect to their motions to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2): (1) verified responses of each Town Defendant to Plaintiffs' first set of interrogatories regarding sovereign immunity; (2) responses of the Chamber to Plaintiffs' first set of interrogatories; (3) responses of the Town to Plaintiffs' first requests for admissions regarding sovereign immunity; (4) responses of each Town Defendant to Plaintiffs' first requests for production of documents regarding sovereign immunity; (5) almost 300 documents produced by the Town; and (6) the Rule 30(b)(6) deposition of the Town's designated representative and accompanying exhibits in support of said deposition. Plaintiffs presented the following discovery materials to the trial court for consideration with respect to Town Defendants' motions to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2): (1) an affidavit from an expert on risk management and safety for municipal parades; (2) an affidavit and accompanying exhibits in support of said affidavit from Mrs. Parker; (3) an affidavit and accompanying exhibits in support of said affidavit from Mr. Parker; and (4) almost 200 pages of documents produced by the Chamber.

In accordance with Town Defendants' request that the trial court enter findings of fact and conclusions of law in accordance with N.C. Gen. Stat. § 1A-1,

Rule 52(a)(2), in an order entered 20 August 2014, the trial court made the following findings regarding Town Defendants' motions to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) for lack of personal jurisdiction on the basis of sovereign immunity:

2. Among other claims, Plaintiffs' Complaint alleged that [Town Defendants] negligently organized the parade in a manner which failed to provide safe walking paths for parade attendees, and which resulted in obstructions of public streets and sidewalks, including in violation of N.C. Gen. Stat. § 160A-296, and that [Town Defendants] failed to require or issue a parade permit, in violation of [the Town's] ordinances.

. . . .

4. Pursuant to an Order of this [c]ourt of April 30, 2014, Plaintiffs were permitted to conduct discovery from [Town Defendants] limited to the two issues of sovereign immunity and public official immunity.

. . . .

6. In their Complaint, and at the hearing, Plaintiffs alleged that governmental immunity and public official immunity were waived by [Town Defendants'] purchase of liability insurance.

. . . .

11. [The Town] insurance policy in effect on the date of Cullen Parker's death (December 5, 2011) contained an express non-waiver of sovereign immunity endorsement.

12. The language of this non-waiver endorsement is

identical to the language of the non-waiver endorsement at issue in *Lunsford v. Renn*, 207 N.C. App. 298 (2010); in that case, the N.C. Court of Appeals ruled that this language did not waive sovereign immunity.

13. Notwithstanding the existence of this insurance policy, the [c]ourt has considered Plaintiffs' claim that the doctrine of sovereign immunity is inapplicable on the grounds that [the Town] was engaged in a proprietary, rather than a governmental, function.

14. In support of the allegation that the parade was proprietary in nature, Plaintiffs' Complaint alleged, in part, that the parade generated substantial income for [the Town]. Plaintiffs' Complaint also alleged, in part, that [the Town] was engaged in a joint venture with [the Chamber], which entity itself generated substantial income for organizing the parade. Further, Plaintiffs' Complaint alleged, in part, that [the Town] promoted the parade outside its territorial limits. [Town Defendants] deny these allegations.

I5. The North Carolina General Assembly has never designated either the planning or sponsorship of a parade as a governmental or proprietary function.

16. The planning or sponsorship of a Christmas parade is not necessarily governmental in nature; that is, neither the planning nor sponsorship of a Christmas parade is an activity that can only be provided by a governmental agency.

17. The planning or sponsorship of a Christmas parade is an activity that can be performed both privately and publicly.

18. Moreover, Plaintiffs' Complaint alleged that [Town

Defendants] failed to properly maintain public streets and sidewalks, which resulted in the injuries alleged. For example, the Complaint alleged that [Town Defendants] failed to properly light public streets and sidewalks, and that public streets and sidewalks were obstructed during the parade.

19. Moreover, the Complaint alleged that [the Town] and [Mr.] Byrd were negligent in violating N.C. Gen. Stat. § 160A-296, which imposes a positive duty upon a municipality to keep its public streets, sidewalks, and alleys open for travel and free from unnecessary obstructions.

The trial court then concluded that, because the General Assembly "has not designated a parade as a governmental activity," and because parades "are not necessarily governmental in nature," it needed to consider the third step of *Bynum v. Wilson County*, 367 N.C. 355, 758 S.E.2d 643, *reh'g denied*, 367 N.C. 530, 761 S.E.2d 904 (2014), which "set forth a three-step inquiry for determining whether an activity is governmental or proprietary in nature." *See Bynum*, 367 N.C. at 358, 758 S.E.2d at 646. The trial court then stated that it was "unable to conclusively decide for the purposes of [Town Defendants'] Motions to Dismiss under Rule 12(b)(2) that [the Town] was engaged in a governmental, rather than a proprietary, activity," because Plaintiffs and Town Defendants "ma[de] conflicting allegations and submit[ted] conflicting discovery materials concerning whether [Town Defendants] generated substantial income, over operating costs, from the parade directly and/or via a joint venture with [the Chamber]." Additionally, although the trial court recognized that

"the doctrine of sovereign immunity does not protect a municipality from liability for a negligent breach of its statutory duties under N.C. Gen. Stat. § 160A-296 to keep public streets, sidewalks, and alleys in proper repair, open for travel, and free from unnecessary obstructions," it further stated that it was "unable to conclusively determine for the purposes of [Town Defendants'] Rule 12(b)(2) motions that Plaintiffs' claims based upon an alleged failure to maintain safe streets and sidewalks and alleged violation of N.C. Gen. Stat. § 160A-296 should be dismissed." The trial court also stated that, although the complaint alleged Town Defendants violated N.C. Gen. Stat. § 160A-296 and the Town's parade permit ordinance, it was "unable to conclusively determine for the purposes of [Town Defendants'] Rule 12(b)(2) motions that the Complaint against [Town Defendants] should be dismissed due to public official immunity." The trial court then denied Town Defendants' motions to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(2) and (b)(6). The trial court entered an amended order on 30 September 2014 dismissing Plaintiffs' complaint with prejudice as to Mr. Morris and certified, pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), that the dismissal was a final judgment and there was no just reason for delay of an appeal from the order. Town Defendants appeal from the trial court's order denying their N.C. Gen. Stat. § 1A-1, Rules 12(b)(2) and (b)(6) motions to dismiss, and Plaintiffs cross-appeal from the trial court's order dismissing their complaint with prejudice as to Mr. Morris.

## II.   Town Defendants' Appeal

Town Defendants appeal from the trial court's denial of their Rule 12(b)(2) motions to dismiss on the grounds that the trial court lacked personal jurisdiction over Town Defendants on the basis of sovereign immunity.  The parties do not dispute that the trial court's order is interlocutory and "not immediately appealable." *Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 100, 545 S.E.2d 243, 245 (2001); *see also Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."), *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950).

Our Supreme Court has long recognized that "[c]ourts have differed as to whether sovereign immunity is a matter of personal or subject matter jurisdiction," *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327, 293 S.E.2d 182, 184 (1982) (providing that "[a] viable argument may be propounded that . . . the particular forum of the State courts has no jurisdiction over the State's person," while "the doctrine may [also] be characterized as an objection that the State courts have no jurisdiction to hear the particular subject matter of tort claims against the State"), and has itself not yet "determine[d] whether sovereign immunity is a question of subject matter jurisdiction or whether the denial of a motion to dismiss on grounds of sovereign

immunity is immediately appealable." *Id.* at 328, 293 S.E.2d at 184. Nevertheless, this Court has "held consistently" that "denial of a Rule 12(b)(2) motion premised on sovereign immunity constitutes an adverse ruling on personal jurisdiction and is therefore immediately appealable under [N.C. Gen. Stat. §] 1-277(b)." *Can Am S., LLC v. State*, __ N.C. App. __, __, 759 S.E.2d 304, 308, *disc. review denied*, __ N.C. __, 766 S.E.2d 624 (2014).

A.     Standard of Review for a Rule 12(b)(2) Motion to Dismiss

"The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court."[1]

---

[1] Plaintiffs assert that the standard of review for a sovereign immunity defense under Rule 12(b)(2) is controlled by *Sperry Corp. v. Patterson*, 73 N.C. App. 123, 325 S.E.2d 642 (1985), which Plaintiffs insist stands for the proposition that, "for purposes of governmental immunity hearings under Rule 12(b)(2), conflicts between a defendant's *evidence* and a plaintiff's *complaint* are resolved in favor of the plaintiff." (Emphases added.) However, Plaintiffs appear to have misinterpreted the scope of this Court's review in *Sperry Corp.* In *Sperry Corp.*, this Court considered whether the trial court erred in denying the defendants' motions to dismiss the plaintiff's claims that "sought to enjoin performance of the contracts and set aside the contracts due to . . . [the] alleged violation of G.S. 143-52 [by a State employee, who was then Secretary of the Department of Administration], on the grounds that sovereign immunity barred the claims." *Sperry Corp.*, 73 N.C. App. at 125–26, 325 S.E.2d at 644–45. This Court stated that the plaintiff's complaint "raise[d] factual issues" as to whether the State employee "exceeded her authority" and "violated G.S. 143-52 by a pattern of awarding state computer contracts to one company, by deciding to award the contracts in question to [the] plaintiff's competitor before bid invitations ever issued, and by restricting bid specifications so that only [the] plaintiff's competitor could comply with them." *Id.* at 126, 325 S.E.2d at 645. After reviewing "the entire record, *not* just the pleadings," *id.* at 127, 325 S.E.2d at 646 (emphasis added), this Court determined that "[t]he record matters argued by [the] defendants provide[d] a persuasive defense of their actions but [fell] short of irrefutably establishing that [the State employee] acted completely within her statutory authority." *Id.* After a brief recitation of the evidence presented by the defendants, the Court concluded that the defendants "tend[ed] to contradict [the] plaintiff's *allegations and affidavits* to the effect that [the State employee] was predisposed to buy IBM products and structured the bid invitations so as to give an unfair advantage to IBM." *Id.* at 128, 325 S.E.2d at 646 (emphasis added). However, because the defendants did not show that the State employee acted within her authority, the Court determined that it could not hold "as a matter of law that [the State employee wa]s entitled

*Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005). Typically, the parties will present personal jurisdiction issues in one of three procedural postures: "(1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues." *Id.*

"[W]hen neither party submits evidence, [t]he allegations of the complaint must disclose jurisdiction although the particulars of jurisdiction need not be alleged." *Id.* (second alteration in original) (internal quotation marks omitted). "The trial judge must decide whether the complaint contains allegations that, if taken as true, set forth a sufficient basis for the court's exercise of personal jurisdiction." *Id.*

"[I]f the defendant supplements his motion to dismiss with an affidavit or other supporting evidence, the allegations [in the complaint] can no longer be taken as true or controlling and plaintiff[] cannot rest on the allegations of the complaint." *Id.* (second and third alterations in original) (internal quotation marks omitted). In this circumstance, in order "to determine whether there is evidence to support an exercise of personal jurisdiction, the court then considers (1) any allegations in the complaint

to sovereign immunity." *Id.* Therefore, contrary to Plaintiffs' contention in the present case that *Sperry Corp.* sets forth a standard of review that supersedes the "scores of Rule 12(b)(2) cases seemingly requiring the weighing of competing evidence," our reading of *Sperry Corp.*, in its entirety, belies Plaintiffs' interpretation.

that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence)." *Id.* at 693–94, 611 S.E.2d at 182–83; *see, e.g.*, *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615–16, 532 S.E.2d 215, 218 ("[W]here, as in this case, defendants submit some form of evidence to counter plaintiffs' allegations, those allegations can no longer be taken as true or controlling and plaintiffs cannot rest on the allegations of the complaint. . . . In such a case, the plaintiff's burden of establishing *prima facie* that grounds for personal jurisdiction exist can still be satisfied if some form of evidence in the record supports the exercise of personal jurisdiction. Thus, . . . we look to the uncontroverted allegations in the complaint and the uncontroverted facts in the sworn affidavit for evidence supporting the presumed findings of the trial court. (citations omitted)), *disc. review denied and appeal dismissed*, 353 N.C. 261, 546 S.E.2d 90 (2000). In other words, where "unverified allegations in the complaint meet plaintiff's initial burden of proving the existence of jurisdiction . . . and defendant[s] . . . d[o] not contradict plaintiff's allegations[], such allegations are accepted as true and deemed controlling." *Data Gen. Corp.*, 143 N.C. App. at 101, 545 S.E.2d at 246–47 (alterations and omissions in original) (internal quotation marks omitted). "However, to the extent the defendant offers evidence to counter the plaintiff's allegations," *id.* at 101, 545 S.E.2d at 247, since Rule 12(b)(2) permits a trial court to consider matters outside the pleadings, *see id.* at 102, 545 S.E.2d at 247,

"those allegations may no longer be accepted as controlling, and *the plaintiff can no longer rest on such allegations in the complaint.*"  *Id.* at 101, 545 S.E.2d at 247 (emphasis added).

Finally, if the parties "submit dueling affidavits[,] . . . the court may hear the matter on affidavits presented by the respective parties, . . . [or] the court may direct that the matter be heard wholly or partly on oral testimony or depositions."  *Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (second alteration and second omission in original) (internal quotation marks omitted); *see also Bruggeman*, 138 N.C. App. at 615, 532 S.E.2d at 217 ("If the exercise of personal jurisdiction is challenged by a defendant, a trial court may hold an evidentiary hearing including oral testimony or depositions or may decide the matter based on affidavits.").  "If the trial court chooses to decide the motion based on affidavits, [t]he trial judge must determine the weight and sufficiency of the evidence [presented in the affidavits] much as a juror."  *Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (alterations in original) (internal quotation marks omitted).  Further, where parties "submit[] depositions to the trial court, and [the court's] findings are replete with facts taken from these depositions," after holding a hearing "on the question of personal jurisdiction" where "parties argue[] facts based on the depositions," such a case has "moved beyond the procedural standpoint of competing affidavits to an evidentiary hearing."  *Deer Corp. v. Carter*, 177 N.C. App. 314, 322, 629 S.E.2d 159,

166 (2006). In such circumstances, the trial court must "act as a fact-finder, and decide the question of personal jurisdiction by a preponderance of the evidence," *id.* (citation omitted), because a plaintiff then has "the ultimate burden of proving jurisdiction rather than the initial burden of establishing *prima facie* that jurisdiction [was] proper." *Id.* (alteration in original) (internal quotation marks omitted).

"When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (internal quotation marks omitted). "Findings of fact and conclusions of law are necessary on decisions of any motion or order ex mero motu only when requested by a party." N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2013).

In the present case, pursuant to Plaintiffs' motion, the trial court continued the hearing on Town Defendants' motions to dismiss to allow discovery served on Town Defendants "limited in scope to only those issues raised in [Town Defendants'] Rule 12(b)(2) Motion[s] to Dismiss for lack of personal jurisdiction on the basis of sovereign immunity and public official immunity." As referenced above, the record indicates that, on this issue, Town Defendants filed the following: affidavits from Mr. Thompson, the Town's finance director, and the senior underwriting manager of the Town's insurance company; responses to Plaintiffs' interrogatories; responses to

Plaintiffs' requests for admissions; responses to Plaintiffs' requests for production of documents; the Town's Rule 30(b)(6) deposition; a copy of the more-than-115-page insurance policy issued to the Town for the policy period of 1 July 2011 to 1 July 2012 that included a "Sovereign Immunity Non-Waiver Endorsement;" and more than 300 pages of documents that included e-mail correspondence between the Chamber and Town Defendants related to the Town's involvement in the planning of the parade, bank statements for the Town's General Fund account from which parade-related expenses "would have been processed for the requested time period," and applications for "privilege licenses" for which fees were paid to the Town "for peddlers to sell items on the street on the day of the parade."

Moreover, contrary to Plaintiffs' suggestion in its response to Town Defendants' principal brief, the record further reflects that Plaintiffs did not rest on the allegations in their complaint in response to Town Defendants' Rule 12(b)(2) motions to dismiss. Rather, the record indicates that Plaintiffs also presented almost 200 pages of additional discovery materials for the trial court's consideration that included: an affidavit from an expert on risk management and safety for municipal parades who attested that the parade organizers "fail[ed] to properly manage, operate, and maintain the streets and sidewalks of [the Town;]" affidavits and accompanying exhibits from Mrs. Parker and Mr. Parker; numerous Christmas parade entry applications from 2011, 2012, and 2013; a 2011 monthly revenue

expense report for the Chamber; a listing of the commercial floats for the 2011 Christmas parade; 2012 and 2013 Christmas parade sponsorship applications; 2013 Christmas parade vendor applications; copies of advertising for the 2011 Christmas parade; copies of advertising "relating to parades and similar events held in other towns in the region[;]" a copy of the Commercial General Liability Coverage Part of the insurance policy issued to the Town for the policy period of 1 July 2010 to 1 July 2011; a copy of the Chamber's bylaws; and a copy of the minutes taken from the Chamber's board of directors' meeting on 15 December 2011.

Thus, the record reflects the parties each submitted affidavits, depositions, and other documentary evidence to the trial court for consideration as to whether it had personal jurisdiction over Town Defendants. Therefore, upon considering the question of personal jurisdiction in light of the procedural posture of this case, we conclude that the trial judge had the responsibility of "act[ing] as a fact-finder," *see Deer Corp.*, 177 N.C. App. at 322, 629 S.E.2d at 166, and was responsible for "determin[ing] the weight and sufficiency of the evidence." *See Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (internal quotation marks omitted).

### B.    Sovereign Immunity Defined

"Sovereign immunity ordinarily grants the [S]tate, its counties, and its public officials, in their official capacity, an unqualified and absolute immunity from law suits." *Paquette v. Cty. of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717

(2002), *disc. review denied*, 357 N.C. 165, 580 S.E.2d 695 (2003). "The rule of sovereign immunity applies when the governmental entity is being sued for the performance of a governmental, rather than proprietary, function." *Id.* "Any activity of [a town] which is discretionary, political, legislative, or public in nature and performed for the public good in behalf of the State rather than for itself comes within the class of governmental functions." *Britt v. City of Wilmington*, 236 N.C. 446, 450, 73 S.E.2d 289, 293 (1952). "When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary." *Id.* In other words, when a town is "acting in behalf of the State in promoting or protecting the health, safety, security, or general welfare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers." *Id.* at 450–51, 73 S.E.2d at 293 (internal quotation marks omitted). "[G]enerally speaking, the distinction is this: If the undertaking of the [town] is one in which only a governmental agency could engage, it is governmental in nature. It is proprietary and private when any corporation, individual, or group of individuals could do the same thing." *Id.* at 451, 73 S.E.2d at 293 (internal quotation marks omitted).

C.     Sovereign Immunity and Liability Insurance

However, "[a] town or municipality may waive sovereign immunity through the purchase of liability insurance." *Lunsford v. Renn*, 207 N.C. App. 298, 308,

700 S.E.2d 94, 100 (2010), *disc. review denied*, 365 N.C. 193, 707 S.E.2d 244 (2011).

Nonetheless, "[i]mmunity is waived only to the extent that the [municipality] is indemnified by the insurance contract from liability for the acts alleged." *Id.* (alterations in original) (internal quotation marks omitted). Thus, "[a] governmental entity does not waive sovereign immunity if the action brought against them is excluded from coverage under their insurance policy." *Id.* (internal quotation marks omitted).

In the present case, Plaintiffs alleged Town Defendants waived sovereign immunity because the Town purchased liability insurance, thereby waiving any defense of immunity from suit pursuant to N.C. Gen. Stat. § 160A-485(a). Town Defendants contend the trial court correctly determined that the Town's purchase of liability insurance did not waive Town Defendants' governmental and public official immunities because the insurance policy contained a non-waiver endorsement[2] identical to that in *Lunsford*, 207 N.C. App. at 308–10, 700 S.E.2d at 100–01 (holding the record showed that the town defendants "ha[d] not waived governmental immunity through their insurance policy" because "the action brought against them

---

[2] The "Sovereign Immunity Non-Waiver Endorsement" in the present case, as in *Lunsford*, provided as follows: "In consideration of the premium charged, it is hereby agreed and understood that the policy(ies) coverage part(s) or coverage form(s) issued by us provide(s) no coverage for any 'occurrence[,]' 'offense[,]' 'accident[,]' 'wrongful act[,]' claim or suit for which any insured would otherwise have an exemption or no liability because of sovereign immunity, any governmental tort claims act or laws, or any other state or federal law. Nothing in this policy, coverage part or coverage form waives sovereign immunity for any insured."

[was] excluded from coverage under their insurance policy" (citations and internal quotation marks omitted)). However, in support of Plaintiffs' assertion that the trial court erred with respect to this determination, Mr. Parker attested in his affidavit to the following:

6.  Later, I went by Snipes Insurance and requested a copy of the [Town's insurance] policy. Amy Goodwin gave me a copy of the policy, attached as Exhibit A, and wrote her name and number at the top in case we had any questions. Exhibit A is a true and complete copy of the policy as it was given to me and represented to be the policy that covered the Town at the time.

7.  [Mrs. Parker] later called Amy to ask about the policy term, and whether the policy effective in December 2011 was the same as the copy we were given, she was told that it was the same policy, just renewed for a new term. There was no endorsement with the policy that had anything to do with immunity.

8.  I understand that counsel for [the Town] contends that the policy in effect at the time of Cullen's death included an endorsement for non-waiver of governmental immunity. This is entirely inconsistent with what [the Town's] insurance agent informed me.

The exhibit accompanying Mr. Parker's affidavit consisted *entirely* of the Commercial General Liability Coverage Part of the Town's insurance policy for the policy period from 1 July 2010 to 1 July 2011. The declarations page from this policy indicates that this was a new policy, and indicated the cost of the advance premium for "*this*

*coverage part.*" (Emphasis added.)

However, while the policy accompanying the affidavit from the senior underwriting manager of the Town's insurance company — which was submitted to the trial court by Town Defendants — included the Commercial General Liability Coverage Part of the Town's insurance policy for the policy period of 1 July 2011 to 1 July 2012, which was the policy in effect at the time that Cullen was struck by the vehicle in the alley, it also included four *additional* coverage parts (e.g., Commercial Automobile, Law Enforcement Liability, Public Officials Liability, Employment Practices Liability), as well as a Common Policy Declarations section that contained twelve forms, among which was the "Sovereign Immunity Non-Waiver Endorsement" described above. This endorsement expressly indicated that it "modifie[d] insurance provided under" *each* of the five coverage parts of the policy. The policy also indicated that it was a renewal of the policy number identified on the Commercial General Liability Coverage Part that accompanied Mr. Parker's affidavit. Because it was incumbent upon the trial court to act as fact-finder and to determine the weight and sufficiency of the evidence presented by the parties, and because there was competent evidence to support its determination, we conclude that the trial court did not err when, after weighing the evidence presented by the parties, it determined the Town did not waive sovereign immunity through the purchase of its insurance policy.

D.    *Bynum* Three-Step Inquiry Concerning Governmental and
                    Proprietary Activities

Town Defendants contend the trial court "misapplied the law regarding governmental immunity" when it considered whether the "acts and omissions" alleged by Plaintiffs against Town Defendants were governmental or proprietary activities.

Our Supreme Court has "set forth a three-step inquiry for determining whether an activity is governmental or proprietary in nature." *Bynum*, 367 N.C. at 358, 758 S.E.2d at 646. "First, a court must consider whether the legislature has designated the activity as governmental or proprietary." *Id.* "Second, when an activity has not been designated as governmental or proprietary by the legislature, that activity is necessarily governmental in nature when it can only be provided by a governmental agency or instrumentality." *Id.* at 358–59, 758 S.E.2d at 646 (internal quotation marks omitted). "Finally, when the particular service can be performed both privately and publicly, the inquiry involves consideration of a number of additional factors, of which no single factor is dispositive." *Id.* at 359, 758 S.E.2d at 646 (internal quotation marks omitted). "Relevant to this [final] inquiry is whether the service is traditionally a service provided by a governmental entity, whether a substantial fee is charged for the service provided, and whether that fee does more than simply cover the operating costs of the service provider." *Id.* (internal quotation marks omitted). While "this Court has held[] [c]harging a substantial fee to the

extent that a profit is made is strong evidence that the activity is proprietary," *Willett v. Chatham Cty. Bd. of Educ.*, 176 N.C. App. 268, 270, 625 S.E.2d 900, 902 (2006) (second alteration in original) (internal quotation marks omitted), "a profit motive is not the sole determinative factor when deciding whether an activity is governmental or proprietary." *Id.* (internal quotation marks omitted). "Instead, courts look to see whether an undertaking is one traditionally provided by the local governmental units." *Id.* (internal quotation marks omitted).

Nonetheless, our Supreme Court has further directed that "[g]overnmental immunity turns on *whether the alleged tortious conduct* of the county or municipality arose from an activity that was governmental or proprietary in nature." *Bynum*, 367 N.C. at 358, 758 S.E.2d at 646 (emphasis added) (internal quotation marks omitted). Thus, "the analysis *should center upon the governmental act or service* that was allegedly done in a negligent manner," *id.* at 359, 758 S.E.2d at 646 (emphasis added), and the focus of this three-step inquiry should be on "the importance of the character of the municipality's acts, rather than the nature of the plaintiff's involvement." *Id.*

In the complaint, Plaintiffs alleged that "[t]he sponsoring, organizing, publicizing and carrying out of the logistics of the Christmas Parade by [the Town] and [the Chamber] are proprietary activities, engaged in for the private advantage and commercial gain of the local [Town] community members and businesses," and

"[a]s sponsors of the Parade, [Town Defendants and the Chamber] . . . ha[d] a duty to ensure the safety of citizens and visitors who [came] to the Parade, including the duty to anticipate the presence of pedestrians, including children, in the parade area and safeguard them from harm from vehicular traffic." However, Plaintiffs alleged, "[i]n particular, [Town] Defendants failed to" do the following:

a) Prevent vehicle ingress and egress from parking areas inside the parade route prior to, during and immediately after the parade. In particular, there were no barricades restricting traffic from entering or exiting the [parking] lot on South 12th Street, no police or safety personnel assisting pedestrians and drivers leaving the parade area at a specific ingress/egress point within the parade route;

b) Provide safe walking paths for pedestrians to access and exit the parade route. In particular, there was no marked pedestrian walkway from Denim Drive to East H Street, and there was no police or public safety presence directing or preventing traffic flow along South 12th Street;

c) Provide adequate police presence to manage public safety at the event. For example, there was a single Erwin Police Car positioned across from the [parking] lot exit on South 12th Street. However, the car was unmanned with no officer providing traffic control or pedestrian support in that area. The presence of the unmanned car presented a false and misleading impression of safety to the public; [and]

d) Test and ensure proper function of street lights inside, along and surrounding the parade route. For example, the public street light on South 12th Street, located directly in front of [Mr. Morris's

building], was not lit[.]

Plaintiffs further alleged that, as a result of "these breaches," "vehicular and pedestrian traffic was disorganized, unmonitored and unsafe," "lighting and visibility at and around the location of the incident was inadequate and unsafe," and, "[a]s a direct and proximate result" of these "failures," Cullen was struck by a vehicle in the alley.

In its order, after finding that the General Assembly "has never designated either the planning or sponsorship of a parade as a governmental or proprietary function," and that "[t]he planning or sponsorship of a Christmas parade is an activity that can be performed both privately and publicly," the trial court concluded that neither the first nor second steps of *Bynum* were determinative as to whether the Town was engaged in a governmental, rather than a proprietary activity. Thus, the trial court turned to the third step of the *Bynum* three-step analysis. After considering the complaint and the discovery materials submitted by the parties, the trial court concluded that, in light of the parties' "conflicting allegations and . . . conflicting discovery materials concerning whether [Town Defendants] generated substantial income, over operating costs, from the parade directly and/or via a joint venture with [the Chamber]," the court was "unable to conclusively decide" whether Town Defendants were engaged in a governmental, rather than a proprietary, activity.

However, an examination of Town Defendants' allegedly tortious conduct shows that such conduct arose from activities that have already been designated as governmental or are necessarily governmental in nature because they can only be provided by a governmental agency or instrumentality. Plaintiffs specifically alleged, among other things, that, at the time Cullen was struck in the alley, there was "an unoccupied police car parked nearby" but "no one was monitoring or directing traffic in and out of the [parking lot,]" and there were no barricades preventing the use of the parking lot during the course of the parade. Thus, Plaintiffs allege that Cullen was struck by the vehicle in the alley as a result of Town Defendants' failure to do the following activities, each of which has been recognized as a governmental function: providing a law enforcement presence, *see, e.g.*, *Hinson v. City of Greensboro*, __ N.C. App. __, __, 753 S.E.2d 822, 827 (2014), *disc. review withdrawn*, 367 N.C. 516, 761 S.E.2d 648 (2014); regulating traffic and "deciding which roads to keep open for vehicular traffic and which roads should not continue to be open for such travel," *see, e.g.*, *Kirkpatrick v. Town of Nags Head*, 213 N.C. App. 132, 142, 713 S.E.2d 151, 158 (2011); approving or denying permits, *see, e.g.*, *Tabor v. Cty. of Orange*, 156 N.C. App. 88, 91, 575 S.E.2d 540, 543 (2003); and providing ambulance services, *see, e.g.*, *Childs v. Johnson*, 155 N.C. App. 381, 386, 573 S.E.2d 662, 665 (2002).

Therefore, because the activities that are alleged against Town Defendants to

have directly and proximately caused the vehicle to strike Cullen in the alley are governmental functions, we conclude that Plaintiffs' claim of negligence against Town Defendants with respect to those activities are barred by sovereign immunity. Consequently, we need not consider whether the trial court's application of the third step in *Bynum* to the question of whether "[t]he planning or sponsorship of a Christmas parade" is a governmental or proprietary function was erroneous,[3] since an examination of whether "substantial fee[s]" were charged by, or accrued to, Town Defendants for this activity would only have been required if "the particular service[s] at issue could] be performed both privately *and* publicly," *see Bynum*, 367 N.C. at 358, 758 S.E.2d at 646 (emphasis added), which is not true of the challenged services enumerated above. Accordingly, we hold the trial court erred by denying Town Defendants' Rule 12(b)(2) motions to dismiss Plaintiffs' claim of negligence against Town Defendants on the grounds that Town Defendants breached their duty of care to ensure the safety of residents and visitors to the 2011 Christmas parade.

### E.     Alleged Violations of N.C. Gen. Stat. § 160A-296(a)

---

[3] We note that the record includes affidavits and voluminous discovery materials submitted by both the moving and non-moving parties for the trial court's consideration in response to Town Defendants' Rule 12(b)(2) motions to dismiss. Therefore, although the trial court stated it was "unable to conclusively decide" whether Town Defendants were engaged in a governmental, rather than a proprietary, activity — because the parties presented "conflicting allegations and . . . conflicting discovery materials concerning whether [Town Defendants] generated substantial income, over operating costs, from the parade directly and/or via a joint venture with [the Chamber]" — the trial court was responsible for "act[ing] as a fact-finder," *see Deer Corp.*, 177 N.C. App. at 322, 629 S.E.2d at 166, and for "determin[ing] the weight and sufficiency of the evidence." *See Banc of Am. Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (internal quotation marks omitted).

Town Defendants next contend the trial court erred by denying its Rule 12(b)(2) motions to dismiss Plaintiffs' claim that the Town and Mr. Byrd breached their duties in violation of N.C. Gen. Stat. § 160A-296(a).

N.C. Gen. Stat. § 160A-296(a) provides in relevant part:

> A city shall have general authority and control over all public streets, sidewalks, alleys, bridges, and other ways of public passage within its corporate limits except to the extent that authority and control over certain streets and bridges is vested in the Board of Transportation. General authority and control includes but is not limited to all of the following:
>
> (1) The duty to keep the public streets, sidewalks, alleys, and bridges in proper repair.
>
> (2) The duty to keep the public streets, sidewalks, alleys, and bridges open for travel and free from unnecessary obstructions.
>
> . . . .
>
> (4) The power to close any street or alley either permanently or temporarily.
>
> (5) The power to regulate the use of the public streets, sidewalks, alleys, and bridges.
>
> . . . .
>
> (7) The power to provide for lighting the streets, alleys, and bridges of the city.

N.C. Gen. Stat. § 160A-296(a)(1), (2), (4), (5), and (7) (2013). Thus, although the "[m]aintenance of . . . public road[s and] highway[s] is generally considered a

governmental function[, an] exception is made in respect to streets and sidewalks of a municipality." *Kirkpatrick*, 213 N.C. App. at 140, 713 S.E.2d at 157 (alterations and omission in original) (internal quotation marks omitted). "This exception to the general rule that street and road maintenance is a governmental function . . . has been recognized and uniformly applied in this jurisdiction [so that] the maintenance of streets and sidewalks is [properly classified] as a ministerial or proprietary function." *Id.* (alterations in original) (internal quotation marks omitted). The duty "is positive. While the municipal authorities have discretion in selecting the means by which the traveling public is to be protected against a dangerous defect in the street, provided the means selected are adequate, there is no discretion as to the performance or nonperformance of the duty itself." *Id.* (internal quotation marks omitted). Accordingly, a town or municipality has an "obligation to protect individuals from injury resulting from defective street and roadway conditions without being allowed to avoid liability for negligently performing its street and road maintenance obligations by relying on a governmental immunity defense while retaining discretion over the manner in which streets and roads are actually maintained." *Id.*

"[T]he extent to which particular municipal streets and roads are kept open for use by members of the public . . . is a governmental function and that governmental immunity is available to municipalities as a defense to damage claims arising from

such discretionary road closure decisions." *Id.* at 142, 713 S.E.2d at 158. In other words, "municipalities may exercise their discretion, while remaining subject to protection from liability by the doctrine of governmental immunity, in deciding which roads to keep open for vehicular traffic and which roads should not continue to be open for such travel." *Id.* In the event that the municipality "decides to allow travel on a particular street or road, governmental immunity is not available as a defense to any claim arising from personal injuries or property damage sustained as a result of a defective condition in the maintenance of that street or road." *Id.*

"[A]n obstruction can be anything . . . which renders the public passageway less convenient or safe for use." *Sisk v. City of Greensboro*, 183 N.C. App. 657, 659, 645 S.E.2d 176, 179 (omission in original) (internal quotation marks omitted), *disc. review denied*, 361 N.C. 569, 650 S.E.2d 813 (2007). However, traffic on a crossing street is not a type of obstruction against which a municipality has a duty to protect its citizens, since such is not something over which a municipality has control and is not a fixture alongside a public road. *See id.* at 659–60, 645 S.E.2d at 179. To consider traffic as an obstruction "would lead to the absurd result of subjecting a municipality to potential liability every time there is a traffic accident on a city street. In short, a moving car that is being operated, even if negligently, cannot be considered an 'obstruction' within the meaning of N.C. Gen. Stat. § 160A-296(a)(2)." *Id.* at 660, 645 S.E.2d at 179. Nonetheless, "parked cars *could* constitute obstructions which

might violate the requirements of N.C. Gen. Stat. § 160A-296." *Beckles–Palomares v. Logan*, 202 N.C. App. 235, 244, 688 S.E.2d 758, 764 (emphasis added), *disc. review denied*, 364 N.C. 434, 702 S.E.2d 219 (2010).

In the present case, Plaintiffs alleged that the Town and Mr. Byrd breached their duties in violation of N.C. Gen. Stat. § 160A-296(a) in the following ways:

> a) [The Town] blocked or allowed the blocking of South 12th Street at the Denim Street entrance and the East H Street entrance to the Street, but failed to block traffic from using the alley or other entrances to [the parking lot] by the public before, during and after the parade;
>
> b) [The Town] allowed South 12th Street at the Incident Site to be obstructed by an 18-wheeled truck during the course of the parade and events, without providing traffic control for the truck or near the Incident Site;
>
> c) [The Town] allowed vehicles to be parked along the alley and used as observation stations for the parade, which further obstructed the view for pedestrians and drivers at the Incident Site;
>
> d) [The Town] failed to maintain an existing public street light to ensure that it was functioning to illuminate South 12th Street near its intersection with the alley at the Incident Site; [and]
>
> e) [The Town] failed to otherwise provide adequate street lighting at the Incident Site[.]

Plaintiffs also alleged that an 18-wheeler truck "was parked or stopped in the middle of South 12th Street" as the group walked towards the restaurant, that trash

receptacles were located along the north side of the alley behind the restaurant, and that cars were parked in areas "not designated for parking" near the restaurant. However, Plaintiffs did not allege that any of these conditions impeded the driver's ability to see, or avoid striking, Cullen as Cullen crossed the alley in front of her vehicle along South 12th Street. Moreover, Plaintiffs alleged that, at the time the group was crossing the alley, the 18-wheeler truck was no longer "blocking cars" from exiting the parking lot through the alley onto South 12th Street, the receptacles were located north of the incident site, and Plaintiffs did not allege that any cars were obstructing the ingress/egress point of the alley onto South 12th Street.

In its order, the trial court expressly concluded that, after considering "the [c]omplaint *and* partial discovery materials submitted," (emphasis added), the court was "unable to conclusively determine for the purposes of [Town Defendants'] Rule 12(b)(2) motions [whether] Plaintiffs' claims based upon an alleged failure to maintain safe streets and sidewalks and alleged violation of N.C. Gen. Stat. § 160A-296 should be dismissed." In other words, with respect to Plaintiffs' claim that Town Defendants' alleged violations of N.C. Gen. Stat. § 160A-296(a) directly and proximately caused Cullen to be struck by the vehicle, the trial court stated that it considered the affidavits and other discovery materials presented by the parties, but did not make specific findings about the evidence presented and did not "determine the weight and sufficiency of the evidence [presented]." *See Banc of Am.*

*Sec. LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183 (internal quotation marks omitted). Since the trial court's order indicated that it considered evidence beyond the allegations in Plaintiffs' complaint, we remand this matter to the trial court with instruction to make findings that do not just reiterate Plaintiffs' allegations, but instead reflect its assessment of the evidence presented and its determination of the weight and sufficiency of this evidence, and to determine whether such evidence established that these alleged violations of N.C. Gen. Stat. § 160A-296(a) directly and proximately caused the driver of the vehicle to strike Cullen.

### F.     Issues on Appeal Concerning Public Official Immunity and Public Duty Doctrine

Town Defendants finally contend the trial court erred when it made the following conclusion:

> Public official immunity does not apply where "conduct violates clearly established statutory or constitutional rights of which a reasonable person in their position would be aware." *Rogerson v. Fitzpatrick*, 170 N.C. App. 387, 390 (2005). The Complaint alleged that [Town Defendants] violated several such laws, including N.C. Gen. Stat. § 160A-296 and a parade permit ordinance of [the Town]. At this point, the [c]ourt is unable to conclusively determine for the purposes of [Town Defendants'] Rule 12(b)(2) motions that the Complaint against [Town Defendants] should be dismissed due to public official immunity.

The record before us indicates that Town Defendants moved to dismiss Plaintiffs' complaint on the basis of public official immunity and the public duty doctrine

pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), and not pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2). Nevertheless, because we remand this matter to the trial court to determine the weight and sufficiency the evidence presented concerning alleged violations of N.C. Gen. Stat. § 160A-296(a) and to make findings and conclusions with respect to this evidence, we decline to undertake an examination of whether Town Defendants' purported violations of N.C. Gen. Stat. § 160A-296(a) implicate the public official immunity doctrine. *See Little v. Wachovia Bank & Tr. Co.*, 252 N.C. 229, 243, 113 S.E.2d 689, 700 (1960) ("The courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, . . . deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions."). Additionally, because we have determined that Plaintiffs' claim of negligence against Town Defendants on the grounds that Town Defendants breached their duty of care to ensure the safety of residents and visitors at the 2011 Christmas parade were barred by sovereign immunity, we need not undertake an examination of whether the trial court erroneously denied Town Defendants' 12(b)(6) motions to dismiss on the grounds that Plaintiffs' allegations concerning the sufficiency of the police presence and the regulation of traffic in support of Plaintiffs' claim of negligence were barred by the public duty doctrine.

### III.    Plaintiffs' Cross-Appeal

Plaintiffs cross-appeal from the trial court's amended order granting Mr. Morris's Rule 12(b)(6) motion and dismissing with prejudice Plaintiffs' complaint as to Mr. Morris.  The parties do not dispute that this order is interlocutory and not immediately appealable.  However, the record indicates that the trial court certified, pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), that the dismissal was a final judgment and there was no just reason for delay of an appeal from such order.  *See Sharpe v. Worland*, 351 N.C. 159, 161–62, 522 S.E.2d 577, 579 (1999) ("[I]mmediate review is available when the trial court enters a final judgment as to one or more, but fewer than all, claims or parties and certifies there is no just reason for delay.").

"A motion to dismiss made pursuant to G.S. 1A-1, Rule 12(b)(6) tests the legal sufficiency of the complaint." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citing *Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).  "In order to withstand such a motion, the complaint must provide sufficient notice of the events and circumstances from which the claim arises, and must state allegations sufficient to satisfy the substantive elements of at least some recognized claim." *Id.*  "The question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Id.* "In general, a complaint should not be dismissed for insufficiency *unless it appears to*

*a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim."* *Id.* at 670–71, 355 S.E.2d at 840 (internal quotation marks omitted). "Such a lack of merit may consist of the disclosure of facts which will necessarily defeat the claim as well as where there is an absence of law or fact necessary to support a claim." *Id.* at 671, 355 S.E.2d at 840–41. "Our standard of review on a motion to dismiss for failure to state a claim is *de novo* review." *Jackson v. Charlotte Mecklenburg Hosp. Auth.*, __ N.C. App. __, __, 768 S.E.2d 23, 24 (2014) (internal quotation marks omitted).

To make out a *prima facie* case of negligence, "a plaintiff must show that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury." *Bostic Packaging, Inc. v. City of Monroe*, 149 N.C. App. 825, 830, 562 S.E.2d 75, 79, *disc. review denied*, 355 N.C. 747, 565 S.E.2d 192 (2002).

Plaintiffs contend the allegations in their complaint were sufficient to defeat Mr. Morris's Rule 12(b)(6) motion to dismiss and assert that the trial court erred by granting Mr. Morris's motion. Although Plaintiffs concede that Cullen was struck by the vehicle in the alley adjacent to Mr. Morris's building, which alley was privately owned by Defendant Erwin Parking Center, Inc. ("Erwin Parking") and not by Mr.

Morris,[4] Plaintiffs assert that the "dangerous condition" "restricting visibility for the driver who struck Cullen" "originated on [Mr.] Morris's property, and was therefore caused by [Mr.] Morris." We disagree.

"A landowner in North Carolina owes to those on its land the duty to exercise reasonable care in the maintenance of [its] premises." *Lampkin ex rel. Lapping v. Hous. Mgmt. Res., Inc.*, 220 N.C. App. 457, 459, 725 S.E.2d 432, 434 (alteration in original) (internal quotation marks omitted), *disc. review denied*, 366 N.C. 242, 731 S.E.2d 147 (2012). "[T]he duty to protect from a condition on property arises from a person's control of the property and/or condition, and in the absence of control, there is no duty." *Id.* at 460, 725 S.E.2d at 435. Thus, "a landowner's duty to keep property safe (1) does not extend to guarding against injuries caused by dangerous conditions located off of the landowner's property, and (2) coincides exactly with the extent of the landowner's control of his property." *Id.* at 461, 725 S.E.2d at 435.

In support of Plaintiffs' assertion that they presented sufficient evidence of Mr. Morris's negligence, Plaintiffs direct our attention to *Marzelle v. Ski-Land Manufacturing Co.*, 227 N.C. 674, 44 S.E.2d 80 (1947), *Dunning v. Forsyth Warehouse Co.*, 272 N.C. 723, 158 S.E.2d 893 (1968), and *Klassette v. Liggett Drug Co.*, 227 N.C.

---

[4] Plaintiffs alleged that Erwin Parking owned the property on which the incident occurred, and that Mr. Morris was the president of Erwin Parking. However, Plaintiffs made no allegations or claims against Mr. Morris in his capacity as president of Erwin Parking. Accordingly, we consider only those allegations and claims made against Mr. Morris as owner of the building located immediately adjacent to the site of the incident.

353, 42 S.E.2d 411 (1947). Plaintiffs argue that, like *Marzelle*, *Dunning*, and *Klassette*, the present case concerns a circumstance in which a person was injured as a result of a dangerous condition that originated on property adjacent to the incident site property, and which properties did not share a common owner.

In *Marzelle*, the plaintiff sustained an injury when he slipped on syrup that was "flowing entirely across the sidewalk from the open doors [of the defendant's candy and confections manufacturing business] to the curb." *Marzelle*, 227 N.C. at 675, 44 S.E.2d at 80. The substance was being swept out of the doors of the defendant's business by the defendant's employees, there was "no sign or other warning of the slippery condition of the sidewalk," and the substance "looked like dirty water, off a dirty cement or wood floor." *Id.* at 675–76, 44 S.E.2d at 80–81. Because "there was nothing in the appearance or odor of the substance on the sidewalk, as [the plaintiff] approached, to indicate it was syrup or to import danger therefrom," *id.* at 676, 44 S.E.2d at 81, the Court determined there was sufficient evidence of the defendant's negligence to withstand a motion for judgment of nonsuit, even though the injury occurred on property that was not owned by the defendant. *See id.*

In *Dunning*, the plaintiff "was seriously injured when a metal covering over a drainage culvert broke under her foot as she walked along the sidewalk on which the defendant's property abutted." *Dunning*, 272 N.C. at 723, 158 S.E.2d at 894. The

plaintiff alleged that the defendant, without first obtaining a permit that was required by city ordinance, "cut through and removed a narrow cross-section of the city's concrete sidewalk for the purpose of constructing a drainage culvert to carry surface water from its building under the sidewalk and into the city's drainage system," *id.*, and that, "[a]fter the excavation[,] the defendant placed over the culvert a thin metal sheet, and on top of this metal sheet poured a covering of concrete sufficient to make the surface conform to the undisturbed portion of the sidewalk." *Id.* "The metal sheet, weakened by corrosion, gave way when [the] plaintiff stepped on it." *Id.* The Court determined the evidence presented "was sufficient to permit the jury to find the defendant created the defective condition which resulted in [the] plaintiff's injuries," *id.* at 725, 158 S.E.2d at 895, even though the injury occurred on property that was not owned by the defendant. *See id.* at 724, 158 S.E.2d at 895.

Finally, in *Klassette*, the plaintiff was injured when she slipped on a greasy substance that was "running out of" the building leased to the defendant, a drug store company, and spreading over the sidewalk adjoining the defendant's building. *See Klassette*, 227 N.C. at 355, 42 S.E.2d at 413. Although the "greasy and oily substances and liquids" running out of the building across the sidewalk were residue from the aftermath of a fire in the building on the previous day, the plaintiff alleged that, by allowing the substances and liquids to remain on the sidewalk, the defendant "rendered said sidewalk in an unsafe and dangerous condition," *id.*, "took no

measures to remedy the dangerous and unsafe condition of said sidewalk, or to guard against the risks and dangers arising from the risks of said greasy and oily substances and liquids thereon," *id.* at 355–56, 42 S.E.2d at 413, and "failed to take any precautions, or to notify persons attempting to use said sidewalk of the dangerous and unsafe condition thereof." *Id.* at 356, 42 S.E.2d at 413.

However, in *Klassette*, our Supreme Court provided that, "in so far as pedestrians are concerned, any liability of owner, or of occupant of abutting property for hazardous condition existent upon adjacent sidewalk is *limited to conditions created or maintained by him*, and must be predicated upon his negligence in that respect." *Id.* at 362, 42 S.E.2d at 418 (emphasis added). "[A]n owner, or an occupant is liable, if at all, for damage caused by the escape of substances from the premises only where some fault can be attributed to him." *Id.* "The owner, or the occupant, is not liable for injuries caused others in the absence of proof of negligence, unless he is shown to have created a nuisance." *Id.* Thus, contrary to the dispositions of *Marzelle* and *Dunning*, in *Klassette*, the Court affirmed the trial court's judgment for nonsuit since there was "no evidence that the fire in the building was caused by the negligence of the owners or of the occupant," *id.*, "the conditions resulting from extinguishing the fire were brought about by the city in the exercise of a governmental function, over which the owners, or the occupant had no control, and for which they, or it, may not be held responsible," *id.*, and "[i]f oil from the drug store escaped in the water, the

evidence fail[ed] to show that it was due to any fault on the part of the owners or of the occupant."[5]  *Id.*

Mr. Morris, however, contends the present case is controlled by *Lampkin ex rel. Lapping v. Housing Management Resources, Inc.*, 220 N.C. App. 457, 725 S.E.2d 432 (2012).  In *Lampkin*, the plaintiff was a four-year-old child who sustained permanent brain injury when she was playing on a playground in the common area of an apartment complex that was located on land owned, operated, and managed by the defendants, "passed through a broken portion of a chain-link fence owned by the apartment complex to play on a frozen pond on adjacent property," which property was not owned by the defendants, and fell through the ice into the water.  *Lampkin*, 220 N.C. App. at 458, 725 S.E.2d at 433–34.  Prior to the plaintiff's injury, the owner of the adjacent property notified the apartment complex that "'children were coming through the fence onto her property' and that she 'was concerned someone would get hurt.'"  *Id.* at 458, 725 S.E.2d at 434.  The plaintiff contended that a "reciprocal duty should be imposed on landowners whose property abuts property on which a third party maintains a pond, . . . where a landowner knows that children from his property are gathering and playing on or near a dangerous condition on neighboring property,"

---

[5] Plaintiffs concede that the disposition of *Klassette* is contrary to the disposition they seek in the present case.  However, Plaintiffs assert that *Klassette* is relevant to their argument regarding this issue on appeal because the Court recognized the principle "that landowners can be held liable where their negligent actions create a dangerous condition that resulted in personal injury to someone off-site."

and that "the landowner ha[d] a duty to protect those children from injury by that condition." *Id.* at 460, 725 S.E.2d at 434.

This Court "disagree[d] with [the p]laintiffs' contention that a landowner's duty of reasonable care extend[ed] to guarding against injury caused by a dangerous condition on neighboring property, and . . . conclude[d] that the imposition of such a duty would be contrary to public policy and the established law of this State," *id.*, because imposing such a reciprocal duty would necessarily "impermissibly shift the burden of making that condition safe from the owner of that condition, who has exclusive control over the use of her land, to the owner of the adjacent property, who has no control." *Id.* at 460, 725 S.E.2d at 434–35. "[B]ecause [the d]efendants did not control the pond on the adjacent property, their duty to keep their premises safe did not include an obligation to make the pond safe by preventing children on their land from accessing the pond." *Id.* at 461, 725 S.E.2d at 435. "Rather, the adjacent landowner, with exclusive control over the pond, had the sole duty to keep the pond safe, the only obligation to act, and the only possible liability." *Id.*

Plaintiffs assert that the present case is distinguishable from *Lampkin* because — unlike the frozen pond in *Lampkin*, which was not located on the property of the defendants and was the dangerous condition at issue in that case — Plaintiffs contend "the dangerous condition originated on [Mr.] Morris's property" when Mr. Morris "negligently failed to maintain the light which he installed and owned, . . . [which

rendered] the incident site . . . dangerously dark[, and t]his dark condition . . . resulted in Cullen's death." In other words, Plaintiffs insist that, like the confectioner's syrup in *Marzelle*, the greasy, oily, firehose residue in *Klassette*, and the weakened metal sheet covering the drainage culvert in *Dunning*, the nonfunctioning light on Mr. Morris's building itself, and *not* the darkness, was the dangerous condition that spread across the alley and caused the vehicle to strike Cullen. Nonetheless, we are unpersuaded that the nonfunctioning light on the South 12th Street side of Mr. Morris's building was, itself, a dangerous condition that *created* "th[e] dark condition" of the nighttime sky. As the owner of the property adjacent to the alley on which the incident occurred, Mr. Morris's liability, if any, was "limited to [hazardous conditions existent that were] created or maintained by him," *see Klassette*, 227 N.C. at 362, 42 S.E.2d at 418, and Mr. Morris "[wa]s not obligated to protect against injury from a dangerous condition over which [he] ha[d] no control." *See Lampkin*, 220 N.C. App. at 464, 725 S.E.2d at 437. Because Plaintiffs did not allege that Mr. Morris had a duty to illuminate the property that was owned by Erwin Parking, we conclude that Plaintiffs' complaint failed to sufficiently allege that Mr. Morris breached a duty owed to Plaintiffs, and, thus, Plaintiffs failed to set forth a *prima facie* claim of negligence. Accordingly, we hold the trial court did not err by dismissing with prejudice Plaintiffs' claims against Mr. Morris.

Because Plaintiffs did not allege any claim for negligence *per se* against Mr.

Morris, we decline to address Plaintiffs' argument on appeal concerning Mr. Morris's negligence based on his purported violations of the Town's zoning ordinances. Additionally, because Plaintiffs' allegations were insufficient to support the application of the voluntary undertaking doctrine, *cf. Lampkin*, 220 N.C. App. at 466–67, 725 S.E.2d at 437–39, we decline to address Plaintiffs' argument on appeal that Mr. Morris "voluntarily assumed a duty of care when he affirmatively acted by installing and operating a light at the incident site."

## IV. Conclusion

In sum, we conclude that the trial court did not err when, after weighing the evidence presented by the parties, it determined the Town did not waive sovereign immunity through the purchase of its insurance policy. Because the activities that are alleged against Town Defendants to have directly and proximately caused the vehicle to strike Cullen in the alley are governmental functions, we conclude that Plaintiffs' claim of negligence against Town Defendants with respect to those activities are barred by sovereign immunity, and that the trial court erred by denying Town Defendants' Rule 12(b)(2) motions to dismiss Plaintiffs' claim of negligence against Town Defendants on the grounds that Town Defendants breached their duty of care to ensure the safety of residents and visitors to the 2011 Christmas parade. We remand this matter to the trial court with instruction to make findings reflecting its assessment of the evidence presented and its determination of the weight and

sufficiency of this evidence, and to determine whether such evidence established that the alleged violations of N.C. Gen. Stat. § 160A-296(a) directly and proximately caused the vehicle to strike Cullen. Finally, because Plaintiffs' complaint failed to sufficiently allege that Mr. Morris breached a duty owed to Plaintiffs, and, thus, that Plaintiffs failed to set forth a *prima facie* claim of negligence, we hold the trial court did not err by dismissing with prejudice Plaintiffs' claims against Mr. Morris.

AFFIRMED IN PART; REVERSED IN PART; REMANDED IN PART.

Judges HUNTER, JR. and DIETZ concur.