IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-489

No. COA21-305

Filed 19 July 2022

Rockingham County, No. 20 CVS 1204

JOSHUA HUNDLEY, Plaintiff,

v.

AUTOMONEY, INC., Defendant.

Appeal by defendant from Order entered 29 January 2021 by Judge Susan E. Bray in Rockingham County Superior Court. Heard in the Court of Appeals 8 February 2022.

> *Brown, Faucher, Peraldo & Benson, PLLC, by James R. Faucher and Jeffrey K. Peraldo, for plaintiff-appellee.*

> *Womble Bond Dickinson (US) LLP, by Michael Montecalvo and Scott D. Anderson, for defendant-appellant.*

GORE, Judge.

Defendant AutoMoney, Inc. appeals from an Order Denying Motions to Dismiss. We affirm.

## I. Background

Plaintiff Joshua Hundley is a citizen of Rockingham County, North Carolina. In 2017, Mr. Hundley received a car tile loan from AutoMoney. Mr. Hundley first learned about car title loans from a friend. Mr. Hundley specifically learned of

AutoMoney's services through a subsequent internet search. AutoMoney is a car title loan provider based out of South Carolina. AutoMoney does not maintain any physical locations in North Carolina.

¶ 3   Following his initial internet search, Mr. Hundley called AutoMoney from North Carolina. During this telephone conversation, the AutoMoney employee asked Mr. Hundley is he was interested in obtaining a car title loan. The AutoMoney employee asked Mr. Hundley some additional questions to determine his eligibility for a car title loan and then informed him during the initial telephone conversation that AutoMoney could loan him at least $1,000.00. The AutoMoney employee then told Mr. Hundley to drive to South Carolina in order to obtain the car title loan.

¶ 4   On 2 September 2017, Mr. Hundley drove from Rockingham County, North Carolina to Indian Land, South Carolina, where an AutoMoney store is located. In the window of the Indian Land, South Carolina AutoMoney store, there is a sign which reads, "NC Titles Welcomed." While at the Indian Land, South Carolina store, AutoMoney issued Mr. Hundley a car title loan. The loan was in the amount of $1,220.00 at an annual interest rate of 158.000%. AutoMoney then put a lien on Mr. Hundley's vehicle through the North Carolina Department of Motor Vehicles ("NCDMV").

¶ 5   Mr. Hundley made payments on the car title loan over the phone from North Carolina. On multiple occasions, AutoMoney called Mr. Hundley in North Carolina

for collection purposes. Eventually, Mr. Hundley fell behind on making payments on the car title loan. AutoMoney then took possession of Mr. Hundley's car from his driveway in North Carolina.

¶ 6        On 20 May 2020, Mr. Hundley filed a Complaint in Rockingham County Superior Court alleging causes of action for violations of the North Carolina Consumer Finance Act, for unfair and deceptive trade practices, usury allegations, and seeking declaratory relief. In response, AutoMoney filed a Motion to Dismiss pursuant to North Carolina Rules of Civil Procedure 12(b)(2) and 12(b)(6) on 30 June 2020. Both parties submitted affidavits and evidence pertaining to the Motion to Dismiss. The matter came on for hearing on 25 January 2021. The trial court entered an Order Denying Motions to Dismiss on 29 January 2021. AutoMoney filed Notice of Appeal on 22 February 2021.

## II.    Appellate Filings

¶ 7        As a preliminary matter, multiple appellate motions have been filed. AutoMoney filed a Petition for Writ of Certiorari on 24 June 2021 and Mr. Hundley filed a Motion to Dismiss Interlocutory Appeal on 23 September 2021. We discuss these appellate filings in turn.

### A.  Petition for Writ of Certiorari

¶ 8        Under N.C.R. App. P. 21(a)(1), "a writ of certiorari will only be issued upon a showing of appropriate circumstances in a civil case where [*inter alia*] no right to

appeal from an interlocutory order exists." *Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 12, 598 S.E.2d 570, 578-79 (2004). This Court has determined that it is appropriate to grant writ of certiorari in the interest of justice when the impact of the lawsuit is "significant," the issues involved are "important," and the case presents a need for the writ in the interest of the "efficient administration of justice," or the granting of the writ would "promote judicial economy." *See Stetser*, 165 N.C. App. at 12, 598 S.E.2d at 578-79 (granting review of a class action certification based on the "need for efficient administration of justice," the "significance of the issues in dispute," the "significant impact" of the lawsuit, the effect of the order on "numerous individuals and corporations" and the "substantial amount of potential liability" involved); *see also Hill v. Stubhub, Inc.*, 219 N.C. App. 227, 232, 727 S.E.2d 550, 554 (2012) (granting review in order to "further the interests of justice"). Interlocutory review tends to serve judicial economy when an appeal presents pure questions of law, "not dependent on further factual development." *Lamb v. Wedgewood S. Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 872 (1983).

¶ 9    AutoMoney's appeal from the trial court's denial of their Motion to Dismiss presents two issues for this Court to review: (1) whether the trial court erred by denying defendant's 12(b)(2) motion and determining that it has personal jurisdiction over AutoMoney and (2) whether the trial court erred by denying AutoMoney's 12(b)(6) Motion to Dismiss. A trial court's denial of a motion to dismiss based on

personal jurisdiction implicates a substantial right and is immediately appealable, independent of a petition for writ of certiorari. N.C. Gen. Stat. § 1-277(b) ("Any interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant . . . ."). AutoMoney asks this Court to exercise our discretion to review the denial of its 12(b)(6) motion, which otherwise would not be immediately appealable. AutoMoney's 12(b)(6) motion is based on the enforceability of a choice of law provision found in the loan agreement entered between AutoMoney and Mr. Hundley. This issue appears to be a pure question of law which does not require further development of the factual record. Thus, in the interest of judicial economy, we grant certiorari and elect to exercise our discretion to review the denial of AutoMoney's 12(b)(6) motion in the instant appeal.

**B. Motion to Dismiss Appeal**

Mr. Hundley filed a Motion to Dismiss Interlocutory Appeal that requests this Court to dismiss as interlocutory the portion of AutoMoney's appeal which relates to the 12(b)(6) motion. "Ordinarily, a trial court's denial of a motion to dismiss pursuant to Rule 12(b)(6) of the Rules of Civil Procedure is an interlocutory order from which there is no [immediate] right of appeal." *Grant v. Miller*, 170 N.C. App. 184, 186, 611 S.E.2d 477, 478 (2005). However, as discussed above, it is in the interest of judicial economy for this issue to be decided as part of the present appeal. Thus, we deny Mr.

Hundley's Motion to Dismiss the appeal.

### III.    Personal Jurisdiction

We first review AutoMoney's argument that the trial court erred in denying its 12(b)(2) motion to dismiss for lack of personal jurisdiction. AutoMoney asserts that minimum contacts to render personal jurisdiction constitutionally permissible do not exist. AutoMoney does not challenge the applicability of the long-arm statute, thus, the sole issue before this Court regarding personal jurisdiction is whether the trial court properly concluded that the exercise of jurisdiction over defendants did not violate due process.

"The standard of review to be applied by a trial court in deciding a motion under Rule 12(b)(2) depends upon the procedural context confronting the court." *Parker v. Town of Erwin*, 243 N.C. App. 84, 95, 776 S.E.2d 710, 720 (2015) (citations and quotations omitted). "If the parties submit dueling affidavits the court may hear the matter on affidavits presented by the respective parties, or the court may direct that the matter be heard wholly or partly on oral testimony or depositions." *Id.* at 97, 776 S.E.2d at 721 (cleaned up). "If the trial court chooses to decide the motion based on affidavits, the trial judge must determine the weight and sufficiency of the evidence presented in the affidavits much as a juror." *Id.* (cleaned up). "When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record;

if so, this Court must affirm the order of the trial court." *Id.* at 97-98, 776 S.E.2d at 722 (citation omitted).

¶ 13    "The determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum *is a question of fact*." *Cooper v. Shealy*, 140 N.C. App. 729, 732, 537 S.E.2d 854, 856 (2000) (emphasis added) (citation and quotation marks omitted). "When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 694, 611 S.E.2d 179, 183 (2005) (cleaned up). If the trial court's findings of fact are supported by competent evidence in the record, then we must affirm the trial court's order, no matter how we might view the evidence. *Ponder v. Been*, 275 N.C. App. 626, 637, 853 S.E.2d 302, 309-10 (Stroud, J., dissenting), *rev'd per curiam per dissent*, 2022-NCSC-24. "Therefore, the question for the appellate court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some legal theory, whether properly labeled or not." *Replacements, Ltd. v. Midwesterling*, 133 N.C. App. 139, 141, 515 S.E.2d 46, 48 (1999) (cleaned up) (citing *Miller v. Nationwide Mutual Ins. Co.*, 112 N.C. App. 295, 300, 435 S.E.2d 537, 541 (1993), *disc. rev. denied*, 335 N.C. 770, 442 S.E.2d 519 (1994)).

¶ 14 Personal jurisdiction analysis involves two steps. "First, the court must determine if the North Carolina long-arm statute's (N.C. Gen. Stat. § 1-75.4) requirements are met. If so, the court must then determine whether such an exercise of jurisdiction comports with due process." *Cooper*, 140 N.C. App. at 732, 537 S.E.2d at 856.

¶ 15 "To satisfy the requirements of the due process clause, there must exist 'certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice.'" *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95 (1945)). "When evaluating whether minimum contacts with the forum exists, a court typically evaluates the quantity and nature of the contact, the relationship between the contact and the cause of action, the interest of the forum state, the convenience of the parties, and the location of the witnesses and material evidence." *Berrier v. Carefusion 203, Inc.*, 231 N.C. App. 516, 527, 753 S.E.2d 157, 165 (2014) (cleaned up).

¶ 16 The United States Supreme Court has recognized two types of personal jurisdiction that can exist with regard to non-resident defendants: general jurisdiction and specific jurisdiction. "General jurisdiction is appliable to cases where the defendant's 'affiliations with the State are so continuous and systematic as to

render them essentially at home in the forum State.'" *Beem USA Ltd.-Liab. Ltd. P'ship v. Grax Consulting, LLC*, 373 N.C. 297, 303, 838 S.E.2d 158, 162 (2020) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 180 L. Ed. 2d 796, 803 (2011) (internal citation and quotation omitted)). "Specific jurisdiction, conversely, encompasses cases in which the suit arises out of or relates to the defendant's contacts with the forum." *Id.* (cleaned up) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127, 187 L. Ed. 2d 624, 633-34 (2014) (citation omitted)). Specific jurisdiction, "is, at its core, focused on the relationship among the defendant, the forum, and the litigation." *Id.* (cleaned up). "A defendant's physical presence in the forum state is not a prerequisite to jurisdiction." *Button v. Level Four Orthotics & Prosthetics, Inc.*, 2022-NCSC-19, ¶ 39 (citing *Walden v. Fiore*, 571 U.S. 277, 283, 188 L. Ed. 2d 12 (2014)). "While a contractual relationship between an out-of-state defendant and a North Carolina resident is not dispositive of whether minimum contacts exists, 'a single contract may be a sufficient basis for the exercise of specific personal jurisdiction if it has a substantial connection with this State.'" *Button*, 2022-NCSC-19, ¶ 39 (quoting *Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 786). In the present matter, the trial court only considered whether specific jurisdiction exists, thus our analysis follows suit.

¶ 17        The evidence presented to the trial court indicates that AutoMoney posted advertisements on their website specifically targeted at North Carolina residents and

ran advertisements in a local magazine which is only distributed in nine counties in North Carolina and five counties in South Carolina. The affidavit of a former AutoMoney assistant manager and loan officer indicates that AutoMoney employees would routinely receive and return calls to North Carolina borrowers, as part of those calls AutoMoney employees would ask where the caller is located, and that AutoMoney mailed solicitation flyers into North Carolina. The evidence also shows that AutoMoney employs a vehicle recovery service which is located in North Carolina and has recovered four hundred and forty-two vehicles in North Carolina for AutoMoney. Regarding Mr. Hundley specifically, the evidence shows that Mr. Hundley called AutoMoney from North Carolina. During that telephone conversation the AutoMoney employee asked if Mr. Hundley was interested in getting a car title loan, asked questions about his car to determine eligibility for a car title loan, told Mr. Hundley that AutoMoney could loan him at least $1,000, and the AutoMoney employee instructed Mr. Hundley to drive to the AutoMoney store in South Carolina to receive the loan. When Mr. Hundley arrived at the AutoMoney store there was a sign in the window which read "NC Titles Welcomed." Additionally, AutoMoney put a lien on Mr. Hundley's vehicle using the NCDMV, Mr. Hundley made payments on the loan over the telephone from North Carolina, AutoMoney called Mr. Hundley in North Carolina several times for collection purposes, and when Mr. Hundley fell

behind on payments, AutoMoney took possession of his vehicle in North Carolina. The trial court's order made findings of fact in line with this evidence.

¶ 18        The trial court's order stated that, based upon the findings of fact, AutoMoney "has purposefully availed itself of the privilege of conducting business in North Carolina." The trial court went on to state that AutoMoney "has created continuing obligations between itself and borrowers in North Carolina," that Mr. Hundley's claims arise out of AutoMoney's activities in North Carolina, and that the exercise of personal jurisdiction is constitutionally reasonable.

¶ 19        The trial court's findings of fact are supported by competent evidence. As such, they are conclusive on appeal. *Button*, 2022-NCSC-19, ¶ 45. Further, the trial court's findings of fact do support its conclusion that specific personal jurisdiction is proper over AutoMoney.

¶ 20        "There must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 260, 625 S.E.2d 894, 899 (2006) (citing *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 679, 231 S.E.2d 629, 632 (1977)). "In determining minimum contacts, the court looks at several factors, including: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties."

*Id.* (citation omitted). "These factors are not to be applied mechanically; rather, the court must weigh the factors and determine what is fair and reasonable to both parties. No single factor controls; rather, all factors must be weighed in light of fundamental fairness and the circumstances of the case." *Id.* (cleaned up).

¶ 21        Applying the factors from *A.R. Haire*, it is clear AutoMoney's contacts with North Carolina came in the form of contracting with a North Carolina resident despite having the knowledge that Mr. Hundley's performance of the contract (i.e., making payments on the loan) would occur from North Carolina, AutoMoney made collection calls to Mr. Hundley in North Carolina, AutoMoney placed a lien on Mr. Hundley's vehicle in North Carolina, and AutoMoney entered North Carolina to take possession of Mr. Hundley's vehicle. These contacts are directly related to the car title loan which is the subject of the cause of action. Further, North Carolina clearly has an interest in these contacts, exhibited by the laws enacted by the North Carolina General Assembly concerning loans such as the loan at issue here. It is not this Court's responsibility to reweigh these factors. It is sufficient that the factors are supported by the findings of fact and the findings of fact are supported by competent evidence, as this Court's sole responsibility on appeal is to ensure that the trial court's factual findings regarding personal jurisdiction are supported by competent evidence. *See Ponder*, 275 N.C. App. at 637, 853 S.E.2d at 309-10 (Stroud, J., dissenting); *Evergreen Int'l Aviation*, 169 N.C. App. at 694, 611 S.E.2d at 183.

¶ 22    Compare the matter *sub judice* to *Stallings v. Hahn*, 99 N.C. App. 213, 392 S.E.2d 632 (1990), where this Court concluded that jurisdiction could not constitutionally be exercised. In *Stallings*, the only contacts between the defendant and North Carolina were an advertisement placed in a national magazine, telephone calls between the plaintiff and defendant, and a cashier's check sent by plaintiff to defendant. *Id.* at 216, 392 S.E.2d at 633. In contrast, in the case *sub judice*, defendant placed an advertisement on their website that was targeted at customers in North Carolina and ran an advertisement in a regional publication that is only distributed in North Carolina and South Carolina. AutoMoney also received and returned calls to/from customers in North Carolina and regularly hired a company which is located in and operates in North Carolina to repossess vehicles in North Carolina. Further, AutoMoney placed a lien on Mr. Hundley's vehicle in North Carolina through the NCDMV, called Mr. Hundley in North Carolina regarding his car title loan, and took possession of Mr. Hundley's vehicle in North Carolina.

¶ 23    This Court does not believe that AutoMoney could reasonably and in good faith advertise their car title loan services in North Carolina, enter into a loan agreement with a North Carolina resident, secure that loan with collateral which is registered and located in North Carolina, place a lien on property located in North Carolina through the NCDMV, and enter North Carolina to take possession of the collateral and not expect to be subject to the privileges and protections of North Carolina law

merely because the loan paperwork was signed in South Carolina. The trial court did not err by concluding AutoMoney is subject to personal jurisdiction in North Carolina and denying AutoMoney's 12(b)(2) motion.

## IV. Rule 12(b)(6) Motion to Dismiss

¶ 24 AutoMoney next argues that the trial court erred in denying its Rule 12(b)(6) Motion to Dismiss, because the trial court should have applied the choice-of-law provision found in the parties' loan agreement which calls for the application of South Carolina law.

¶ 25 A Rule 12(b)(6) Motion to Dismiss, is a motion to dismiss the cause of action for "[f]ailure to state a claim upon which relief can be granted." N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2020).

> The Motion to Dismiss under N.C. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. In ruling on the motion the allegations of the complaint must be viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted.

*Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979) (citations omitted). "This court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003). "As a general rule,

a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Stanback*, 297 N.C. at 185, 254 S.E.2d at 615 (cleaned up).

¶ 26        In analyzing the sufficiency of the complaint, for the purposes of a Rule 12(b)(6) motion, the complaint must be liberally construed. *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987).

> A complaint is sufficient to withstand a motion to dismiss where no insurmountable bar to recovery on the claim alleged appears on the face of the complaint and where allegations contained therein are sufficient to give a defendant notice of the nature and basis of plaintiff's claim so as to enable him to answer and prepare for trial.

*Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1981).

¶ 27        In the case *sub judice*, Mr. Hundley's complaint exclusively alleges North Carolina statutory claims. Mr. Hundley's North Carolina statutory claims are supported by sufficient allegations in the complaint to survive a Rule 12(b)(6) motion. In fact, at the hearing on AutoMoney's Motion to Dismiss, AutoMoney's attorney stated, "We're not challenging that [Mr. Hundley] properly stated a claim based on North Carolina statutes . . . ." Instead, at the hearing before the trial court, and again on appeal, AutoMoney argues that the choice-of-law provision in the loan agreement precludes Mr. Hundley from bringing any claim relating to the car title loan he received from AutoMoney under North Carolina law.

¶ 28 We believe AutoMoney's arguments go beyond the scope of a Rule 12(b)(6) motion. As exhibited by AutoMoney's counsel's statements at the hearing on the motions to dismiss regarding the sufficiency of Mr. Hunleys' North Carolina statutory claims, AutoMoney's arguments go beyond the pleadings and address the merits of Mr. Hundley's claims. However, review of a Rule 12(b)(6) motion should only be concerned with whether the plaintiff properly stated a claim.

> A 12(b)(6) motion for failure to state a claim upon which relief can be granted addresses the claim itself and the moving party is simply asserting that the pleading to which the motion is directed does not sufficiently state a claim for relief. Unless the motion is converted into one for summary judgment, as permitted by the last sentence in Rule 12(b), *it does not challenge the actual existence of a meritorious claim*. By contrast, the summary judgment motion embraces more than the pleadings and the trial court may properly consider affidavits, depositions, and other information designated in the Rule. The Rule 56 motion is an assertion that there is no genuine issue as to any material fact and that the moving party is entitled to judgment on the merits as a matter of law on the basis of the record then existing.

*Shoffner Indus., Inc. v. W.B. Lloyd Constr. Co.*, 42 N.C. App. 259, 262, 257 S.E.2d 50, 53, *disc. rev. denied*, 298 N.C. 296, 259 S.E.2d 301 (1979) (emphasis added). The Rule 12(b)(6) motion is concerned with the contents of the complaint. *Id.* at 262-63, 257 S.E.2d at 50. Instead of challenging the sufficiency of the North Carolina statutory claims alleged, AutoMoney's arguments asks the court to interpret and apply a choice-of-law provision found in an outside document, albeit a document and choice-

of-law provision that is likely to be central to determining the merits of the case. Without passing judgment on the merits of the parties' claims and arguments, we believe that AutoMoney's arguments go beyond the scope of a Rule 12(b)(6) motion and are better suited accompanying a Rule 56 motion for summary judgment.

¶ 29 The trial court did not review a motion for summary judgment and the issue before this court is whether the trial court properly denied AutoMoney's Rule 12(b)(6) Motion to Dismiss. Mr. Hundley has sufficiently alleged North Carolina statutory claims, and AutoMoney does not argue otherwise. The issue of whether the choice-of-law provision found in the loan agreement is controlling under a conflict of law analysis and whether that choice-of-law provision precludes Mr. Hundley from bringing North Carolina statutory claims relating to the loan agreement is beyond the scope of a Rule 12(b)(6) motion and this Court's review in the present appeal. Thus, we conclude that the trial court did not err in denying AutoMoney's 12(b)(6) Motion to Dismiss.

## V.   Conclusion

¶ 30 For the foregoing reasons, we conclude that defendant-appellant AutoMoney is subject to personal jurisdiction in North Carolina, and thus, the trial court did not err in denying AutoMoney's 12(b)(2) Motion to Dismiss. Additionally, Mr. Hundley's complaint sufficiently alleges North Carolina statutory claims, and the trial court did not err in denying AutoMoney's 12(b)(6) Motion to Dismiss.

AFFIRMED.

Judges HAMPSON and WOOD concur.